IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MERI BURRIS-HALL,                                    CV. 09-6354-MA

                Plaintiff,                    OPINION AND ORDER

        v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

                Defendant.

RICHARD F. MCGINTY
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, OR 97301

        Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID MORADO
Regional Chief Counsel
MATTHEW W. PILE
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Meri Burris-Hall brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  For the reasons that follow, I AFFIRM the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI benefits on November 16, 2005, alleging disability beginning on November 1, 2005.  Plaintiff's application was denied initially and on reconsideration.  Plaintiff requested a hearing.  Plaintiff appeared *pro se* and testified at a hearing before an administrative law judge (ALJ) on June 25, 2009.  A vocational expert, C. Kay Wise, also testified at the hearing.  The ALJ issued an unfavorable decision on July 13, 2009.  The Appeals Council denied plaintiff's request for review on September 29, 2009.  Accordingly, the ALJ's decision became the final decision of the agency.

## FACTUAL BACKGROUND

Plaintiff was born in 1971 and was 38 years old on the date of the ALJ's decision.  Plaintiff completed some high school, and received a General Equivalency Diploma (GED).  Plaintiff has taken some office skills and computer classes, and has worked as a part-

time delivery person and babysitter.  However, none of plaintiff's previous sporadic employment satisfies the past relevant work threshold.  20 C.F.R. § 416.968.  Plaintiff alleges disability beginning November 1, 2005, due to bipolar disorder, unstable mood, anxiety, fatigue, and cognitive problems.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to identify jobs existing in significant numbers in the national economy that the claimant can perform.  Yuckert, 482 U.S. at 141-42.

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity. See 20 C.F.R. §§ 416.920(b), 416.971 *et seq*.

At step two, the ALJ found that plaintiff had the following medically determinable severe impairments:  bipolar disorder and asthma.  See 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically

equals a listed impairment.  See 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that plaintiff should avoid concentrated exposure to pulmonary irritants.  The ALJ determined that plaintiff is limited to unskilled labor which allows for her to avoid any contact with the general public.  See 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found plaintiff has no past relevant work.  See 20 C.F.R. § 416.965.

At step five, the ALJ found that considering her age, education, work experience, and residual functional capacity, plaintiff could perform such representative occupations as pricer for bakery goods, garment sorter, and hand packager, occupations which exist in significant numbers in the national economy.  See 20 C.F.R. §§ 416.960(c)(a)(4)(v), 416.920(g).  Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff contends that the ALJ made several errors: (1) failing to ensure plaintiff received a fair hearing; (2) failing to fully develop the record; (3) failing to find that plaintiff's anxiety was a severe impairment; (4) improperly discrediting plaintiff's testimony; (5) improperly assessing the medical

4 - OPINION AND ORDER

opinions of Dr. Balmer, and Dr. Dietlein, and J. Ben Newman; and (6) improperly discounting the lay witness testimony of Billy Gates.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039; Valentine v. Comm'r Soc. Security Admin., 574 F.3d 685, 690 (9th Cir. 2009).  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

I. **Plaintiff Recieved a Fair Hearing.**

Plaintiff asserts that her due process rights were violated when the ALJ failed to meet his heightened burden of ensuring that plaintiff, who appeared *pro se*, obtained a fair hearing. Plaintiff argues that the ALJ failed to ensure that she understood the hearing procedure, including evidentiary rules, burdens of proof, rules for submitting additional evidence, and her right to stop the hearing to obtain representation. Plaintiff also complains that the ALJ failed to fully and fairly develop the record concerning the VE's testimony.

A. **Due Process**.

Due process requires that a claimant receive meaningful notice and an opportunity to be heard. <u>Udd v. Massanari</u>, 245 F.3d 1096, 1099 (9th Cir. 2001); <u>Hernandez-Devereaux v. Astrue</u>, 614 F.Supp.2d 1125, 1135 (D. Or. 2009).

Plaintiff has failed to demonstrate a procedural due process claim in this instance. Plaintiff concedes that she was informed of her right to be represented by counsel. The record is clear that plaintiff was informed of that right three times prior to the hearing, including the possibility of obtaining free legal services. (Tr. 46, 51, 55.) Additionally, plaintiff was informed at the hearing concerning her right to counsel, and the ALJ asked plaintiff whether she wanted to continue the hearing to a later

date to allow for plaintiff to obtain counsel. (Tr. 27.)
Plaintiff declined, stating that she wanted to proceed. (<u>Id.</u>)

Plaintiff suggests that the ALJ was required to ascertain
whether she understood the hearing process itself — the burdens of
proof, evidentiary rules, and the process for submitting additional
evidence. However, the record reflects that plaintiff was informed
in writing at least twice about the hearing process, including
which issues would be decided at the hearing, that she could
present evidence and call and cross-examine witnesses, and that she
could submit additional evidence. (Tr. 51-52, 54-57.)
Additionally, the ALJ described the hearing process at the
beginning of the proceeding. (Tr. 26-27.) Plaintiff provides no
support for her suggestion that the ALJ was required to provide
more specific information concerning the five-step sequential
process and its attendant burden shifting.

Furthermore, plaintiff does not contend that her mental
impairments limited her ability to understand the written notices
or the oral explanation provided by the ALJ about the hearing
process, or that her mental impairments prevented her in any way
from complying with the procedure to submit additional information.
<u>Compare</u> <u>Hernandez-Devereaux</u>, 614 F.Supp.2d at 1135 (finding no
colorable due process claim) <u>with</u> <u>Udd</u>, 245 F.3d at 1099 (finding
colorable due process claim where the claimant was unrepresented by
counsel and lacked mental capacity to understand termination notice

and procedures to contest that notice).  Thus, plaintiff has failed to establish that her due process rights were violated when the ALJ proceeded with the hearing.

Likewise, plaintiff has not demonstrated that she was denied an opportunity to meaningfully participate in the proceedings. Plaintiff alleges that her mental impairments limited her ability to advocate for herself at the hearing because she did not understand the vocational expert's (VE's) testimony.  However, a review of the transcript reveals that plaintiff actively participated in the proceedings, thoroughly answering questions from the ALJ.  When plaintiff was provided with an opportunity to ask questions of the VE and plaintiff stated that she did not understand the VE's testimony, the ALJ assisted plaintiff in asking the VE appropriate questions concerning potential environmental limitations due to her asthma which plaintiff thought might prevent her from working in a bakery.  (Tr. 38-39.)  Plaintiff does not identify any other way she was allegedly limited from participating in the hearing.[1]  Based on the record before me, I cannot conclude that plaintiff was denied a meaningful opportunity to participate in the hearing.

---

[1]The court likewise rejects plaintiff's wholly unsupported contention that she suffered a due process violation because the hearing lasted only 33 minutes.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(plaintiff bears burden of establishing disability).

In short, plaintiff has failed to demonstrate that she was denied the opportunity to prove her claim, or that her mental impairments prevented her from understanding the procedure, therefore, her due process claim fails.  Hernandz-Devereaux, 614 F.Supp.2d at 1135-36.

**B.    Duty to Develop the Record.**

"An ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for a proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001)(citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)).  When a claimant is unrepresented, the ALJ must be especially diligent in seeking all the relevant facts.  Tonapetyan, 242 F.3d at 1150; see also Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).

Plaintiff correctly contends that an ALJ has a heightened duty to ensure that the record is fully and fairly developed when the claimant is pro se.  Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992).  However, plaintiff's conclusory allegation that the ALJ failed to meet "his multiple duties" is insufficient to establish that the ALJ should have developed the record.  See 42 U.S.C. § 423(d)(5)(A); Mayes, 276 F.3d at 459 (ALJ's duty to develop the record does not allow claimant to shift her burden of establishing disability).  To the extent that plaintiff makes

particular assertions concerning specific evidence, the court addresses them below.

## II.  __Step Two – Plaintiff's Anxiety.__

Plaintiff appears to argue that the ALJ erred in failing to find that plaintiff's anxiety is a severe impairment. (Plaintiff's Brief (CR. (#15) p. 8.)  In the decision, the ALJ concluded that plaintiff's alleged anxiety disorder was not a severe impairment at step two.  The ALJ noted that plaintiff was diagnosed with an anxiety disorder by J. Ben Newman, plaintiff's mental health nurse practitioner.  However, the ALJ determined that Mr. Newman is not an acceptable medical source for the purpose of diagnosing plaintiff, and that in any event, his diagnosis was based solely on plaintiff's subjective complaints.

To the extent that plaintiff is arguing that the ALJ erred at step two, her argument fails.  At step two, the ALJ must determine whether the claimant has any combination of impairments which significantly limits her ability to do basic work activities.  20 C.F.R. § 416.920(c).

In this case, the ALJ resolved step two in plaintiff's favor, concluding that plaintiff had demonstrated impairments (bipolar disorder and asthma) necessary to satisfy step two. (Tr. 17.)  The ALJ continued the sequential decision making process until reaching a determination at step five.  Any error in failing to designate plaintiff's anxiety as not severe did not prejudice her at step

two, as step two was resolved in her favor. <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007)(any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four); <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting obesity from list of severe impairments at step two was harmless because step two was resolved in claimant's favor).

Additionally, any error in finding that plaintiff's anxiety was not medically determinable was also harmless because the ALJ included the only functional limitations relating to plaintiff's alleged anxiety identified by acceptable medical sources in the RFC. Accordingly, I find no error in the ALJ's decision concluding that plaintiff's alleged anxiety was non-severe or not medically determinable.

Plaintiff's argument also may be construed as a challenge to the ALJ's RFC assessment. See 20 C.F.R. § 416.923 (once claimant has surmounted step two, the ALJ must consider the functional limitations imposed by all medically determinable impairments in the remaining steps of the decision). I address that argument below.

## III. **The ALJ's RFC Assessment.**

A claimant's RFC describes the work-related activities a claimant can do, despite the functional limitations imposed by his impairments. 20 C.F.R. § 404.1545(a), 416.945(a); Social Security

11 - OPINION AND ORDER

Ruling (SSR) 96-8, 1996 WL 37184.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which his medically determinable impairment(s), including any related symptoms may cause physical or mental limitations or restrictions that may affect a claimant's capacity to do work.  SSR 96-8.

In this case, plaintiff makes several arguments relating to the ALJ's RFC assessment.  First, plaintiff contends that the ALJ erred in assessing her credibility.  Second, plaintiff argues that the ALJ failed to adequately address the medical opinions of Dr. Balmer, her treating physician, and Mr. Newman, her mental health nurse practitioner.  Third, plaintiff argues that the ALJ's RFC fails to address any functional limitations posed by her anxiety. Finally, plaintiff contends the ALJ failed to properly assess the lay witness testimony provided by Billy Gates, her fiancé.

**A.    The ALJ Provided Clear and Convincing Reasons to Discount Plaintiff's Testimony.**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Bunnell v. Sullivan, 947

F.2d 341, 344 (9th Cir. 1991); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  <u>Carmickle v. Comm'r Soc. Sec. Admin.</u>, 533 F.3d 1155, 1166 (9th Cir. 2008); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995).  Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. <u>Tommasetti</u>, 533 F.3d at 1039; <u>Bunnell</u>, 947 F.2d at 345-46.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for discounting her credibility.  According to plaintiff, the ALJ failed to provide a complete discussion of her credibility, specifically, the ALJ failed to state which portions of her testimony support a disability finding.

At the hearing, plaintiff testified that she suffers from an anxiety disorder, her bipolar medications make her drowsy and unable to concentrate, she is easily distracted, and that she uses her nebulizer every three to four hours a day for her asthma. (Tr. 31-32.) The ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.

The ALJ provided clear and convincing reasons to partially reject plaintiff's subjective symptom testimony. The ALJ pointed to specific evidence in the record identifying what testimony was credible and what testimony was not. Morgan v. Commissioner of Soc. Security Admin., 169 F.3d 595, 599 (9th Cir. 1999). For example, concerning plaintiff's asthma, the ALJ detailed information from plaintiff's treating physician Paul Balmer, M.D. (Tr. 20.) The ALJ noted that Dr. Balmer found plaintiff's asthma to be mild and intermittent from 2005 until 2007, requiring only occasional use of a steroid inhaler. The ALJ noted that in 2007, plaintiff was seen by Scott Wagnon, a physician assistant, who noted that plaintiff appeared to have suffered an acute asthma flare up, and placed her on more aggressive medications. Continuing, the ALJ detailed that Dr. Balmer was not satisfied with that course of treatment, and that plaintiff's asthma was not well

controlled on that regimen.  The ALJ also discussed that in early
2008, plaintiff was diagnosed with pneumonia.  (Tr. 20.)  The ALJ
noted that as of October 2008, plaintiff's asthma had improved, and
no longer requiring an inhaled steroid.

The ALJ identified specific evidence in the record undermining
plaintiff's contention that her asthma was so debilitating it
prevented her from working.  Based on the records from Dr. Balmer,
the ALJ concluded that plaintiff's contention that she frequently
used her nebulizer to control her asthma was not fully supported by
her medical record.  The ALJ specifically credited plaintiff's
assertion that certain times of the year are more difficult, and
accounted for that testimony in the RFC.  But, the ALJ concluded
that when plaintiff's asthma medications were stable, her asthma
was stable, and thus determined that her asthma did not prevent her
from full time employment.  The ALJ's findings are supported by
substantial evidence in the record.  To be sure, when the
claimant's own medical record undercuts her assertions, the ALJ may
rely on that contradiction to discredit the claimant.  Morgan, 169
F.3d at 600; Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007),
cert. denied, 552 U.S. 1141 (2008).

The ALJ identified additional, specific objective medical
evidence in the record undermining plaintiff's subjective
complaints that she is unable to work due to her bipolar disorder
and anxiety.  For example, the ALJ discussed a psychodiagnostic

interview and mental status examination performed by Nick Dietlein,
Psy.D. in July 2006. The ALJ noted that contrary to plaintiff's
subjective assertion that she is unable to concentrate or pay
attention due to side effects from her medications, Dr. Dietlein
found that plaintiff could understand and remember instructions,
sustain her concentration and attention with some difficulty, and
could engage in appropriate one-on-one interactions. (Tr. 20, 165-
168. The ALJ also detailed a similar report from Bill Hennings,
Ph.D., who described plaintiff as suffering only moderate
difficulty maintaining concentration. The ALJ also described that
plaintiff's allegations of disabling bipolar disorder and anxiety
are undercut by her counseling records, which indicate that
plaintiff was improving on medication, functioning well, and that
her moods are stabilizing. (Tr. 21, 210-13.) The ALJ's conclusions
are supported by substantial evidence in the record.

The ALJ also could properly discredit plaintiff for failing to
regularly attend counseling sessions as recommended by her treating
physician. See Tommasetti, 533 F.3d at 1039 (ALJ properly may
discredit claimant for failing to follow treatment
recommendations); see also Orteza, 50 F.3d at 750 (ALJ may consider
absence of treatment for subjective symptom when assessing
credibility). When discussing plaintiff's mental health issues,
the ALJ detailed that Dr. Balmer had encouraged plaintiff to pursue
counseling options multiple times, yet plaintiff did not regularly

attend counseling sessions until it was explained that she would not receive psychiatric medications without receiving counseling. (Tr. 20, 144, 143, 141.)  Additionally, the ALJ noted that plaintiff had missed several counseling sessions, which the ALJ found inconsistent with plaintiff's allegations of severe mental health issues.  (Tr. 148, 149, 151.)  Where the ALJ's conclusions are supported by substantial evidence in the record, the court must uphold the Commissioner's decision.  <u>Edlund</u>, 253 F.3d at 1156.

Lastly, the ALJ properly relied upon plaintiff's minimal work history in assessing plaintiff's credibility.  (Tr. 21.)  As the ALJ discussed at the hearing, none of plaintiff's previous employment reached the significant gainful activity level, even prior to her alleged disability onset date.  (Tr. 34-35.)  As the ALJ found, plaintiff's actual employment history is inconsistent with plaintiff's primary contention-that she is unable to work due to her alleged impairments.  <u>See</u> <u>Thomas</u>, 278 F.3d at 959 (claimant's spotty work history was a valid credibility consideration); <u>Goudge v. Astrue</u>, 2010 WL 4007538, *3 (D. Or. Oct. 12, 2010)(discrediting claimant for sporadic work history).

The ALJ detailed multiple reasons, which when taken together, provide clear and convincing support, backed by substantial evidence, for partially discrediting plaintiff's testimony and rest on reasonable inferences drawn from the record as a whole.  The findings are sufficiently specific to permit this court to conclude

that the ALJ did not discredit plaintiff's testimony arbitrarily. Morgan, 169 F.3d at 599-600. "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

**B.   The ALJ Adequately Assessed the Medical Opinions.**

   **1.   Standards.**

   To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriquez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss, 427 F.3d at 1216. An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings. Tommasetti, 533 F.3d at 1041; Carmickle, 533 F.3d at 1164; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Magallanes, 881 F.2d at 751. An ALJ also may discount a physician's opinion that is based on a

claimant's discredited subjective complaints.  <u>Tommasetti</u>, 533 F.3d at 1040.

### 2.  Dr. Balmer.

Plaintiff alleges that the ALJ did not properly assess the medical opinion of Dr. Balmer, her treating physician.  Dr. Balmer did not provide an opinion concerning plaintiff's ability to work full time.  However, as plaintiff correctly observes, in a December 22, 2005 chart note, Dr. Balmer described plaintiff as reporting episodes of anxiety, with a fast heartbeat and fast breathing occurring before her work preparedness classes, and that plaintiff wanted to be excused from those classes.  (Tr. 140.)  The record indicates that Dr. Balmer provided plaintiff with a note stating that until plaintiff could be seen by a psychiatrist, she was limited to half days of job training classes.  (<u>Id.</u>)  The record also contains an unidentified hand-written notation dated January 10, 2006, indicating that a doctor (presumably Dr. Balmer) provided plaintiff with a note excusing her from "work preparedness class." (<u>Id.</u>)  According to plaintiff, the ALJ's failure to accord Dr. Balmer's comments about the work preparedness class controlling weight is reversible error.  I disagree.

As defendant correctly indicates, the ALJ is not required to discuss all of the evidence in the record.  <u>Vincent on behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ must explain why significant probative evidence has been

rejected.  Id. at 1395.  In this case, as noted above, the ALJ thoroughly evaluated Dr. Balmer's records concerning plaintiff's asthma.  With respect to plaintiff's bipolar disorder, the ALJ discussed that Dr. Balmer initially had been treating plaintiff for depression, and then settled on a bipolar disorder diagnosis.  The ALJ also described that Dr. Balmer suggested multiple times that plaintiff pursue counseling, and noted that plaintiff had not consistently followed that advice.

Although it appears that Dr. Balmer limited plaintiff to half days of job training until she received counseling, he did not opine that plaintiff should not attend the job training at all.  To be sure, Dr. Balmer did not diagnose an anxiety disorder, nor does the record contain a copy of the note from Dr. Balmer.  More significantly, the record does not contain an opinion from Dr. Balmer that plaintiff's bipolar disorder or anxiety symptoms prevent her from full time employment.

Instead, the record contains two notes excusing plaintiff from attending the job preparedness classes prepared by nurse practitioner Newman, which the ALJ did discuss, and that I will more thoroughly discuss below.  Accordingly, I conclude that the December 2005 chart note from Dr. Balmer was not so significantly probative as to require comment from the ALJ.  Vincent, 739 F.2d at 1394-95 (finding controverted medical evidence to be neither significant or probative).  Additionallly, having carefully

reviewed Dr. Balmer's medical records, and plaintiff's medical records as a whole, I conclude that the ALJ's evaluation of them is supported by substantial evidence and without error.

### 3.   Nurse Practitioner Newman.

Plaintiff complains that the ALJ failed to provide adequate reasons for discounting the opinion of Mr. Newman.  According to plaintiff, the ALJ failed to credit Mr. Newman's February and November 2006 opinions that plaintiff is unable to participate in "job activities" due to her bipolar disorder and axiety and that she will be limited for her "lifetime" or until she was "stable on meds." (Tr. 132, 220.)  Plaintiff contends that the court should infer from the notes that Mr. Newman opined that plaintiff is unable to sustain employment on a full time basis, and that the ALJ erred in failing to give Mr. Newman's opinion controlling weight. I disagree.

The ALJ provided a number of reasons for according Mr. Newman's opinion "little weight." (Tr. 21.)  First, the ALJ appropriately discounted Mr. Newman's anxiety disorder diagnosis because Mr. Newman is not an acceptable medical source.  See 20 C.F.R. § 404.1513(a), (d)(defining acceptable medical sources); SSR 06-3p (only acceptable medical sources may establish the existence of a medically determinable impairment); Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir.), cert. denied, 519 U.S. 881 (1996)(a nurse practitioner working on her own is not an acceptable medical

source).   As a nurse practitioner, Mr. Newman is defined as an "other source[]," under the regulations and is not qualified to provide a diagnosis of a medically determinable impairment. 20 C.F.R. § 404.1513(d)(1).   As the ALJ discussed, Mr. Newman's anxiety disorder diagnosis was not supported by the findings of any other acceptable medical source, and the ALJ could appropriately discount his opinion on that basis.[2]  See Turner v. Commissioner of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010).

Therefore, the ALJ is required only to provide germane reasons for discounting Mr. Newman's opinion.   Turner, 613 F.3d at 1224 (finding ALJ provided germane reasons to disregard opinion of social worker).   I find that the ALJ sufficiently has done so.

The ALJ discounted Mr. Newman's opinion because it was based on plaintiff's subjective complaints.   Plaintiff argues that Mr. Newman's opinion was not based solely on plaintiff's subjective assertions, but on his own Mental Status Examinations (MSE's) and clinical observations.   However, a review of the record undermines plaintiff's assertion.   The records from Mr. Newman contain one

---

[2]Plaintiff erroneously contends that Dr. Hennings diagnosed an anxiety disorder.  A review of Dr. Hennings' psychiatric review technique (PRT) reveals that the portion of the form relating to anxiety-related disorders is blank.  (Tr. 171-183.) I also reject plaintiff's contention that Dr. Hennings' comment that plaintiff had anxiety issues creates an ambiguity requiring further development of the record.  See Mayes, 276 F.3d at 459-60 (ALJ's duty to develop the record only triggered where the record is ambiguous or inadequate to allow for proper evaluation of evidence).

notation of an auditory hallucination, but fail to provide any detailed objective information, and most often indicate that her MSE is "within normal limits." (Tr. 150, 152, 155-57, 211-12.) Consistent with the observation by the ALJ, Mr. Newman's records do not reveal that he performed any objective clinical tests, and appear to be based largely on subjective reports from plaintiff. Thus, the ALJ has provided a germane reason for giving Mr. Newman's opinion little weight. <u>Turner</u>, 613 F.3d at 1223-24; <u>see also</u> <u>Morgan</u>, 169 F.3d at 602 (an opinion of disability premised upon a claimant's complaints which have been properly discounted may be disregarded); <u>Thomas</u>, 278 F.3d at 958-59 (ALJ not obliged to accept opinions that are conclusory, unexplained, and unsupported by clinical findings).

Additionally, the ALJ discounted Mr. Newman's opinion because it was not reflective of plaintiff's current level of functioning. While Mr. Newman indicated in November of 2006 that plaintiff would be unable to participate in job training for her "lifetime," as the ALJ indicated, Mr. Newman's opinion was inconsistent with reports from other doctors. (Tr. 21, 215, 222). Accordingly, I conclude that the ALJ did not err in giving the notes from Mr. Newman little weight.

Plaintiff suggests that the ALJ should not have discounted Mr. Newman's 2006 opinion based on its inconsistency with plaintiff's functioning in 2009 (the date of the ALJ's decision), and that

instead, the ALJ should have considered the possibility of awarding disability for a closed period. Plaintiff's argument is meritless.

Plaintiff did not amend her application at any time to seek a disability determination for a closed period, and even if she had done so, the record does not support such a determination. As the ALJ thoroughly discussed, neither Dr. Dietlein or Dr. Hennings found plaintiff's bipolar disorder to be disabling in 2006. Indeed, plaintiff's treating physician Dr. Balmer only limited plaintiff from the job preparedness classes to half days until she received counseling. And, as the ALJ noted, when plaintiff began seeing a counselor in 2006, as prescribed by Dr. Balmer, she missed several appointments, from which the ALJ could reasonably infer that plaintiff's mental impairments were not as severe as plaintiff alleged. Batson, 359 F.3d at 1193; Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984)(ALJ is entitled to draw inferences which logically flow from the record). Contrary to Mr. Newman, no medically acceptable source who treated, examined, or reviewed plaintiff's medical records has opined that she is unable to sustain employment on a full time basis, either in 2006 or at the time of the ALJ's decision. Accordingly, I find no error in the ALJ's treatment of Mr. Newman's records. See Turner, 613 F.3d at 1224.

////

////

**C.    The RFC Adequately Assessed Plaintiff's Anxiety.**

Plaintiff argues that the RFC fails to include functional limitations caused by her anxiety.  Plaintiff faults the ALJ for failing to account for Dr. Dietlein's Axis II diagnosis and the alleged functional limitations identified by Dr. Dietlein. Plaintiff's argument is without merit.

It is clear from the ALJ's decision that the ALJ carefully reviewed the psychodiagnostic evaluation submitted by Dr. Dietlein. As the ALJ detailed, in July of 2006, Dr. Dietlein administered a clinical interview and mental status examination on behalf of Oregon Disability Determination Services.  Dr. Dietlein's report contained the following behavioral observations:

> When asked about her mood she said that she was depressed and anxious. [Plaintiff] reported current and historical experiences with delusions or hallucinations.  Her cognitive functioning appeared to be in the low average range based on today's assessment.  [Plaintiff] denied current suicidal and homicidal ideation but admitted to a history of suicidal ideation in the past.
>
> [Plaintiff's] cognitive abilities appeared to be largely intact.  She was unable to remember three words after a delayed recall period.  She was able to perform mental arithmetic and subtraction problems but was unable to successfully perform multiplication and division problems.  She was able to process three digits forward and two digits backwards.  Her judgment for a hypothetical dilemma was within normal limits. . . . Her abstract reasoning abilities were adequate.  . . . Her mental and cognitive control was slowed. (Tr. 167.)

The ALJ noted that Dr. Dietlein diagnosed bipolar disorder, and discussed Dietlein's conclusions that plaintiff was able to

understand and remember instructions, sustain her concentration and attention with some difficulty, and engage in appropriate social interactions on a one-on-one basis. (Tr. 20, 168.) The ALJ noted that Dr. Dietlein's evaluation was consistent with reports from plaintiff's therapists, and was not contradicted by any objective evidence in the record, and therefore gave Dr. Dietlein's evaluation significant weight.

Plaintiff contends that the ALJ erroneously failed to account for Dr. Dietlein's Axis II diagnosis of Cluster C traits, and his observation that plaintiff appeared anxious. Plaintiff appears to suggest that an Axis II Cluster C trait diagnosis is akin to an anxiety disorder diagnosis. I disagree.

To begin, Dr. Dietlein utilized the multiaxial assessment system recognized by the *Diagnostic & Statistical Manual of Mental Disorders.* American Psychiatric Ass'n *Dignostic & Statistical Manual of Mental Disorders* 28 (4th ed. 2000, text revision)(*DSM-IV-TR*). The *DSM-IV-TR* describes the five axes as "provid[ing] a convenient format for organizing and communicating clinical information[.]" Axis I is used to report various clinical disorders, and lists anxiety disorders among them. Id. at 27-28. Axis II is utilized for reporting personality disorders, and anxiety disorder is *not* listed as a possible Axis II diagnosis. Id. at 28-29. The *DSM-IV-TR* further provides that there are ten specific personality disorders, and that they are sometimes grouped

into three clusters (Clusters A, B, and C) based on descriptive similarities. Id. at 685. "Cluster C includes the Avoidant, Dependent, and Obsessive-Compulsive Personality Disorders. Individuals with these disorders often appear anxious or fearful." Id. at 685-686.

Contrary to plaintiff's suggestion, it is clear from reviewing Dr. Dietlein's psychodiagnostic evaluation that he did not diagnose an anxiety disorder. Moreover, when his Axis II diagnosis is viewed in the context of the *DSM-IV-TR*, an anxiety disorder diagnosis cannot be inferred from his reference to "Cluster C traits" in Axis II. Therefore, the ALJ did not err in concluding that Dr. Dietlein did not diagnose an anxiety disorder.

Plaintiff also complains that the ALJ failed to account for functional limitations posed by her anxiety. Plaintiff contends that Dr. Dietlein noted that plaintiff was unable to remember three words after a delayed recall, and that she has difficulty with her attention, and that the ALJ erroneously excluded such limitations from the RFC. Again, I disagree.

Contrary to plaintiff's suggestions, her inability to recall three words was not described by Dr. Dietlein as a functional limitation. Rather, plaintiff's performance on the recall test was one of many behavioral observations, as listed above. More importantly, Dr. Dietlein did not link plaintiff's inability to recall those words as a specific functional limitation resulting

from her alleged anxiety.  Dr. Dietlein's report wholly supports the ALJ's conclusion that Dr. Dietlein found plaintiff was able to "understand and remember instructions" and could "sustain her concentration and attention with some difficulties."  (Tr. 20, 168.)

Additionally, Dr. Dietlein's psychodiagnostic evaluation was translated into more specific functional limitations by Bill Hennings, Ph.D., a reviewing physician.  The ALJ examined a psychiatric review technique (PRT) and mental residual functional capacity assessment (MRFC) completed by Dr. Hennings.  The ALJ noted that Dr. Hennings had reviewed plaintiffs records, including the psychodiagnostic evaluation from Dr. Dietlein.  The ALJ discussed that Dr. Hennings found that plaintiff's bipolar disorder caused her mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and that she suffered no episodes of decompensation.  (Tr. 21, 181.)  The ALJ also noted that Dr. Hennings concluded that plaintiff was capable of simple, routine tasks, could interact appropriately with her co-workers, but would be unable to work with the general public.  (Tr. 21, 185-86.)  The ALJ observed that Dr. Hennings and Dr. Dietlein provided the only functional assessments of plaintiff, and gave Dr. Hennings' opinion significant weight. With respect to plaintiff's delayed recall and attention, Dr.

Hennings found that plaintiff was not significantly limited in her ability to carry out very short and simple instructions, and was moderately limited in her ability to carry out detailed instructions. (Tr. 185.) The ALJ's conclusions are supported by substantial evidence in the record.

Plaintiff also complains, for the first time in her reply, that the ALJ erroneously excluded a functional limitation from the RFC. (CR. (#19) p. 8.) Plaintiff notes that Dr. Hennings found that she is moderately limited in her ability to set realistic goals or make plans independently of others, and argues that the ALJ's failure to include this limitation in the RFC requires reversal. (Tr. 168.) Plaintiff's conclusory argument misses the mark.

In the RFC, the ALJ determined that plaintiff was limited to unskilled labor which allows her to avoid contact with the general public. Plaintiff fails to explain how her moderate limitation in one area of adaption was caused by her anxiety, or was not already encompassed in the limitation to unskilled work.

Lastly, plaintiff asserts that the ALJ failed to take into account the side effects of her anxiety medications when fashioning the RFC. Plaintiff testified at the hearing that she is drowsy and her concentration is diminished, and that she is sometimes unable to drive due to her medications. The ALJ did not accept plaintiff's contention of severe medication side effects which impose limitations in excess of the RFC assessment. Contrary to

plaintiff's assertions, as discussed above with respect to plaintiff's credibility, the ALJ addressed plaintiff's medication side effects when he provided multiple clear and convincing reasons to discount plaintiff's subjective complaints. (Tr. 19-21.)

**D.    The ALJ Adequately Addressed the Lay Witness Testimony.**

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. <u>Dodrill</u>, 12 F.3d at 919; <u>Valentine</u>, 574 F.3d at 694.

Plaintiff argues that the ALJ failed to properly credit the lay witness testimony of plaintiff's fiancé, Billy Gates. Mr. Gates submitted a third party report in which he provided that he resides with plaintiff and her five children. According to Mr. Gates, he takes care of plaintiff's five children, but plaintiff is able to do laundry and prepare meals with his assistance. Mr. Gates described that plaintiff is afraid of people and has panic attacks, has multiple physical restrictions, and that plaintiff's medications cause her to be unsteady.

I conclude that the ALJ provided multiple, germane reasons for discounting Mr. Gates' testimony. The ALJ found Mr. Gates' testimony that he had to care for plaintiff's five children to be

inconsistent with plaintiff's hearing testimony that she independently cared for herself and for her children, that plaintiff ensured that the children were ready for school, that plaintiff assisted the children with homework, and that plaintiff cleaned the house while the children attended school. (Tr. 18, 21, 32.) An ALJ may properly discredit lay witness testimony that is inconsistent with the claimant's activities. <u>Bayliss</u>, 427 F.3d at 1218. The ALJ's determination that Mr. Gates' 2006 report is inconsistent with plaintiff's hearing testimony is supported by substantial evidence. However, Mr. Gate's 2006 third party report does appear to be consistent with a 2006 report from plaintiff, and arguably, the ALJ should not have discounted his testimony on that basis. <u>Valentine</u>, 547 F.3d at 694.

However, the ALJ also discounted Mr. Gates' testimony concerning plaintiff's limitations because they appeared exaggerated. As the ALJ noted, Mr. Gates alleged limitations beyond those alleged by plaintiff, whom he had already discredited. <u>Valentine</u>, 574 F.3d at 694 (where an ALJ properly discredits claimant's subjective complaints, an ALJ may reject similar lay witness testimony); <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001). In the portion of the report to which the ALJ refers, Mr. Gates indicated that plaintiff had difficulty lifting, squatting, bending, standing, reaching, walking, kneeling, talking, hearing, stair climbing, memory, completing tasks, concentration,

understanding, following instructions, using hands, getting along with others. (Tr. 101.) At that same time, on a similar form, plaintiff reported fewer limitations. (Tr. 93.) I find that the ALJ provided a germane reason for discounting Mr. Gates's testimony.

Additionally, the ALJ discounted Mr. Gate's third party report because the form was not completed fully. As the ALJ found, there are two pages in Mr. Gates' report for which he did not provide responses. (Tr. 101.) Plaintiff asserts that the ALJ should not have relied upon the incompleteness of the form as a basis for discrediting Mr. Gates. I disagree. The ALJ could infer that Mr. Gates' description lacked reliability because the form was not fully completed. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)(ALJ is entitled to draw inferences which logically flow from evidence). Even if the evidence is susceptible to more than one rational interpretation, where the evidence supports the ALJ's conclusion, the ALJ's decision must be affirmed. Batson, 359 F.3d at 1193; Andrews, 53 F.3d at 1039.

Plaintiff also argues that blank pages create an ambiguity in the record, and that the ALJ failed to meet his duty requiring that he seek clarification. However, the ALJ properly discredited Mr. Gates' testimony and found plaintiff not entirely credible. Furthermore, plaintiff does not explain what specific information Mr. Gates would have provided. Thus, the record before the ALJ was

neither ambiguous nor inadequate to allow for a proper evaluation of the evidence.  Mayes, 276 F.3d at 459-60.

In sum, I find no error in the ALJ's treatment of the lay witness testimony.

**IV.  The Commissioner Met His Burden at Step Five.**

At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy which the claimant can perform.  Andrews, 53 F.3d at 1043.  The Commissioner can satisfy this burden by eliciting testimony from a vocational expert (VE) in response to a hypothetical question that sets out all of the claimant's limitations and restrictions.  Tackett, 180 F.3d at 1103-04.  The hypothetical posed to the VE must accurately reflect all of the claimant's limitations and be supported by the record.  Bayliss, 427 F.3d at 1217; Andrews, 53 F.3d at 1043.

In her reply, plaintiff asserts that the ALJ's reliance on the VE's testimony relating to the "pricer for bakery products" was erroneous.  Plaintiff suggests that the VE did not appropriately limit the number of jobs available to reflect plaintiff's restriction from pulmonary irritants.  Plaintiff also contends that the VE's testimony about the "pricer for bakery products" was inconsistent with the Dictionary of Occupational Titles, and the ALJ should not have relied upon it.

Even assuming arguendo that the ALJ should not have relied upon the VE's testimony relating to the "pricer of bakery products," any such error was harmless. <u>Tomassetti</u>, 553 F.3d at 1042 (determining that error that is inconsequential to the ultimate nondisability determination is harmless); <u>Burch</u>, 400 F.3d at 679. The VE identified two other occupations that plaintiff could perform existing in significant numbers, and about which plaintiff does not complain. The VE also identified: (1) garment sorter, DOT 222.687-014, with 1,600 jobs in Oregon and 142,000 jobs in the national economy; and (2) hand packager, DOT 920.687-134, with 2,890 jobs in Oregon and 162,000 jobs in the national economy. As the ALJ correctly concluded, that portion of the VE's testimony is consistent with DOT. Because substantial evidence remains in the record to support the ALJ's step five determination, any error concerning the pricer for bakery products is harmless. <u>Burch</u>, 400 F.3d at 679. Accordingly, the court concludes that the Commissioner met its burden at step five.

////

////

////

////

////

////

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _14_ day of FEBRUARY, 2011.


/s/ Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge